## AFFIDAVIT OF DANIEL J. SCHNEIDER

I, Daniel J. Schneider, being duly sworn, depose and state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation. I have been an FBI Agent since August 2014. I completed the five-month FBI new agent training in Quantico, Virginia in January 2015, which included training on crimes involving money laundering, fraud, gangs, drugs, national security and counter-terrorism. As an FBI agent, I have worked on numerous investigations, including matters concerning gang, drugs and human trafficking. Prior to becoming an FBI agent, I was a Trooper with the Vermont State Police for more than ten years, where I worked on a wide range of crimes, including robberies, domestic assaults, drug trafficking and wire fraud. In addition, as a law enforcement officer, I have participated in all aspects of criminal investigations, including search warrants, arrest warrants, surveillance, and interviewing witnesses and subjects. I work closely with other law enforcement officers, including members of the Drug Enforcement Administration, Homeland Security Investigations, Internal Revenue Service-Criminal Investigations, and local and state law enforcement officers.

## PURPOSE OF AFFIDAVIT

2.      This affidavit is submitted pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) in support of an application for a search warrant requiring Verizon Wireless, a provider of electronic communication services, to produce records – including historical cell-site location records – relating to the mobile telephone account assigned telephone number (332) 999-6159 (the "Subject Phone") for the time period of November 1, 2019 through

November 30, 2019 (the 'Subject Records").[1]  The requested information is described in more detail in Attachments A and B hereto.[2]

3. As detailed below, there is probable cause to believe that: (a) Rashad Al-Terek WALKER (born 1980) has committed false statement on a loan application, in violation of 18 U.S.C. § 1014, and aggravated identity theft, in violation of 18 U.S.C. § 1028A (the "Subject Offenses"); and (b) the Subject Records contain evidence of the commission of such crimes.

4. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit includes only those facts necessary to establish probable cause for the issuance of the requested warrant and does not include all of the facts uncovered during the investigation.

## PROBABLE CAUSE

5. On April 6, 2020, this Court issued a criminal complaint against WALKER charging him with the Subject Offenses.  (Docket No. 20-MJ-4049-DHH).  A copy of the criminal complaint and supporting affidavit is attached hereto as Exhibit A and incorporated herein by reference.

6. The criminal complaint arose from WALKER's arrest at the DCU Credit Union on Gold Star Boulevard in Worcester, Massachusetts on November 26, 2019.  That day, WALKER went to the DCU branch to finalize a personal loan application for $16,500 earlier

---

[1] 18 U.S.C. 2703(c) authorizes a "court of competent jurisdiction" to issue a search warrant for the kinds of records that this application seeks. A "court of competent jurisdiction" includes a district court ("including a magistrate judge") that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

[2] On June 12, 2020, the U.S. Attorney's Office issued a preservation request to Verizon Wireless.

received over the telephone the evening of November 15, 2019.[3] The caller had applied for the loan using the identity of B.T., including B.T.'s name, social security number and date of birth.[4]

7. When WALKER arrived at DCU to complete the loan on November 26, he identified himself as B.T. and presented documentation to verify his purported identity. That documentation included a Comcast/Xfinity bill in the name of B.T., a paystub in the name of B.T., and a Massachusetts driver's license in the name of B.T. The DCU Branch Manager on duty called Worcester Police because the license looked "fake" and the paystub and Comcast/Xfinity bill also appeared altered.

8. WALKER admitted to Worcester police that he possessed the fraudulent documents, but denied that he had gone to the bank to complete a loan application, stating that he instead intended to join the credit union. WALKER also claimed that he stopped in Worcester as he was driving from Virginia to New Jersey. Police used Massachusetts Registry of Motor Vehicles ("RMV") records to search for B.T. using the date of birth and social security number provided by WALKER. Police located an RMV record in the name of B.T. That record included a photograph of a white male, while WALKER is a black male. Police subsequently determined WALKER's true identity and placed him under arrest.

9. DCU provided a business record containing the information that the caller had provided over the telephone on November 15, 2019 to initiate the loan application process. According to that record, the caller provided the name, social security number and date of birth of B.T. and requested a personal loan in the amount of $16,500. The caller also provided an

---

[3] A third-party company, who provides after-hours services to DCU, is who accepted this call on behalf of DCU.

[4] I know the complete identity of B.T. I refer to him using his initials to protect his privacy.

address in New Hampshire and place of employment for B.T.[5]  DCU was unable to provide law enforcement with the incoming phone number that was in fact used to call on November 15 to initiate the loan application.  However, the caller provided the Subject Phone as both his "cell phone" and his "home phone" number according to the record from DCU.

      10.    I request the Subject Records because there is probable cause to believe that they will provide evidence related to the Subject Offenses.  The Subject Records will provide subscriber information and call detail records.  There is probable cause they will reveal the general location of the person responsible for the call placed to DCU on November 15, 2019.  I say that because (a) the real B.T. confirmed that he has never used a phone with that number nor does he recognize it,[6] and (b) it is likely that the person responsible for the call on November 15 provided an actual phone number in the event DCU needed to obtain additional information regarding the fraudulent loan application  The requested information could lead to co-conspirators who worked with WALKER in stealing B.T.'s identity or witnesses who know about the crimes.  This information is especially pertinent given WALKER's denial that he sought a loan and investigators' interest in compiling additional evidence related to the phone call on November 15, 2019.  In addition, this location information could provide investigators with additional evidence kept at the location from which the call was initiated.

---

[5] The employer was the same one listed on the paystub that WALKER provided to DCU on November 26, 2019.  The address provided also matched the residential address listed for B.T. on the Comcast/Xfinity bill and the paystub.

[6] The real B.T. is presently living outside the United States; however, he normally resides and works in New Hampshire.  The Subject Phone has an area code of "332, which is assigned to New York City.

## RELEVANT TECHNOLOGY

11.     Verizon Wireless[7] is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

12.     Based on my training and experience, I know that Verizon Wireless can collect cell-site data about the Subject Phone.  I also know that wireless providers such as Verizon Wireless typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

13.     Based on my training and experience, I know that Verizon Wireless also collects per-call measurement data, which Verizon Wireless also refers to as the "real-time tool"

---

[7] On June 11, 2020, another law enforcement officer checked a law enforcement database to see what mobile phone carrier services the Subject Phone.  That database indicated that Verizon Wireless is the phone carrier.

5

("RTT").  RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower.  This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

14.     Based on my training and experience, I know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Subject Phone's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

15.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

16.     I further request that the Court direct Verizon Wireless to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on Verizon Wireless, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

17.     I further request that, pursuant to 18 U.S.C. §§ 2705(b) and 2703(b)(1)(A), the Court order Verizon Wireless not to notify any person (including the subscribers or customers to which the materials relate) of the existence of this application, the warrant or the execution of the warrant for the earlier of one year from the date of the Court's Order or upon notice by the government within 30 days of the conclusion of its investigation, unless the Court extends such period under 18 U.S.C. § 2705(b).  Verizon Wireless may disclose this Order to an attorney for Verizon Wireless for the purpose of receiving legal advice.  Non-disclosure is appropriate in this case because the Court's Order relates to an ongoing criminal investigation and disclosure may alert co-conspirators to the existence of the investigation.  There is accordingly reason to believe that notification of the existence of the Order will seriously jeopardize the investigation, including by giving potential targets an opportunity to flee from prosecution, destroy or tamper with evidence, change patterns of behavior or intimidate potential witnesses.  *See* 18 U.S.C. § 2705(b).

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

18. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving potential targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Daniel J. Schneider
Special Agent
Federal Bureau of Investigation

Sworn to via telephone in accordance with Federal Rule of
Criminal Procedure 4.1 on June __18__, 2020:    4:50 p.m.

David H. Hennessy
United States Magistrate Judge

-

8